Alla Kachan, Esq.
Law Offices of Alla Kachan, P.C.
3099 Coney Island Avenue, 3rd Floor
Brooklyn, New York 11235
Tel.: (718) 513-3145

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

                                      **CASE NO.: 1-16-41959-nhl**

In re:                                   **Chapter 11**

                                      **OBJECTION TO CLAIM TO**
Eli Kafif and Mary Kafif,                      **OF RNJ NEW YORK**
                                        **HOLDINGS, LLC**

                 Debtor.

-----------------------------------------------------------------------X

## NOTICE OF MOTION TO REDUCE, EXPUNGE CLAIM No. 21 of RNJ NEW YORK HOLDINGS, LLC

**PLEASE TAKE NOTICE** that a hearing to consider the above-captioned Debtors' Motion to reducing, expunging claims No. 21 filed by RNJ New York Holdings, LLC shall be conducted before the Honorable Judge Nancy H. Lord, United States Bankruptcy Judge, **on February 16, 2016 at 10:30 A.M.** at the United States Bankruptcy Court – Eastern District of New York, 271-C Cadman Plaza East, Brooklyn NY 11201, Courtroom 2529, or as soon thereafter as counsel can be heard.

**PLEASE TAKE FURTHER NOTICE** that any objections to the within Motions must be in writing and must state with particularity the grounds of the objection. The objection must be filed with the Clerk of the Bankruptcy Court electronically at www.nyeb.uscourts.gov, and a copy of

the objection must be served upon the undersigned counsel for the debtor so as to be received no later than seven (7) days before the hearing date.

Dated: Brooklyn, New York
     December 28, 2016

*/s/ Alla Kachan*
Alla Kachan, Esq.
Law Offices of Alla Kachan
3099 Coney Island Avenue, 3rd Floor
Brooklyn, NY 11235

Alla Kachan, Esq.
Law Offices of Alla Kachan, P.C.
3099 Coney Island Avenue, 3rd Floor
Brooklyn, New York 11235
Tel.: (718) 513-3145

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

                                                                **CASE NO.: 1-16-41959-nhl**

In re:                                                          **Chapter 11**

                                                                **AFFIRMATION IN SUPPORT**
Eli Kafif and Mary Kafif,                                       **OF MOTION**

                                    Debtor.

-------------------------------------------------------------------------X

### MOTION OF THE DEBTORS, ELI KAFIF AND MARY KAFIF, TO REDUCE, EXPUNGE CLAIM NO. 21 FILED BY RNJ NEW YORK HOLDINGS, LLC

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this objection pursuant to 28 U.S.C. §1391(b) and (c).

This objection is a core proceeding pursuant to 28 § U.S.C. §157 (b)(2)(B). Proponents of the

Motion for an Order to Expunge a Claim (Hereinafter the "Movants") are the Debtors in a

Bankruptcy proceeding under Chapter 11 of the Bankruptcy Code and a Motion for an Order to

Expunge a Claim is clearly an "allowance or disallowance of claims against the estate or

exemptions from property of the estate..."

2.      The Debtors, Eli Kafif and Mary Kafif, hereby move by their attorneys, Law Offices

of Alla Kachan, P. C., for an Order Expunging, Reducing and or Disallowing Claim No. 21

filed by RNJ New York Holdings, LLC ("RNJ" or "Landlord").

## THE CLAIM No. 21 FILED BY RNJ NEW YORK HOLDINGS, LLC MUST BE REDUCED OR EXPUNGED.

1.      The claim of RNJ, the landlord of premises where the debtors conducted their business is highly suspect, if not frivolous.

2.      The debtors paid rent through and including June 2015 without interruption at the 34 West 34th Street, New York, NY, where they ran a souvenir store with Eli Kafif's brother, Dodi Hafif (another purported creditor herein). For several months prior to July 2015 the debtors considered selling the business interest at the above reference premises. The landlord, RNJ, stated that it had a candidate to take over the lease and buy out the business, namely the tenant next door supposedly wished to expand, and insisted that the Kafifs agree to vacate the premises by the end of July 2015.

3.      All throughout the month of July 2015 negotiations ensured, which resulted in a lease signed by the new tenant. Annexed as Exhibit A are e-mail communications between the parties' attorneys. As part of the agreement, Hat World Inc., the new tenant, was supposed to put $675,000.00 in escrow as the buyout price of Kafif's business. See Exhibit B.

4.      While the July 2015 rent was not paid, it was the Kafif's understanding that the July rent will be taken out from escrow upon the successful consummation of the transaction.

5.      Based on the request to vacate the premises by August 1, 2015, the Kafifs began emptying the store of inventory. However, several days before the scheduled closing date the new tenant backed out of the transaction.

6.      For the next two (2) months the Kafifs frantically tried to get the business back on track, a task proved to be impossible. The store was already empty of merchandise and

11

suppliers were reluctant to provide merchandise as they already knew the Kafifs' business was closing down.

7.    On or about October 5, 2015 the Kafifs vacated the premises.

8.    Upon information and belief the landlord re-let the premises as soon as November 1, 2015.

9.    Thus, at the maximum, RNJ would be entitled to rent from July 2015 through October 2015 (4 months).

10.    That said, RNJ was holding some $145,000.00 in security deposit, which covers most of the owed rent.

11.    RNJ is now maliciously and frivolously attempting to seek a double recovery by claiming the remaining amount on the lease, to which it is not entitled having relet the premises immediately after the Kafifs vacated, and amassing unnecessary attorneys' fees in the process.

9.    Based on the foregoing and based on any other reasons the Debtors may state on the record at any hearing held in respect of this Motion, the Debtors respectfully requests that the Court enter an order, granting the Motion for an order Expunging, Reducing and/or Disallowing Claim No. 21, or alternately holding an evidentiary hearing allowing the examination of the claims and the evidentiary and factual proof against these claims presented by the Debtors, and granting to the Debtors such other and further relief as this Court may deem just and proper.

Dated: December 28, 2016

      Brooklyn, New York

                                    Respectfully Submitted,
                                      */s/ Alla Kachan, Esq.*
                                      Alla Kachan, Esq.

Law Offices of Alla Kachan, P.C.
3099 Coney Island Ave, 3rd floor
Brooklyn, NY, 11235

11

# EXHIBIT A

**From:** hamuy3 <hamuy3@yahoo.com>
   **To:** Alan Sasson <alan@sassonlaw.com>; Arie Mrejen <amrejen@mrejenlaw.com>
   **Cc:** Michael Tsang <mtsang@tsanglawfirm.com>; Paul Popkin <ppopkin@aol.com>; Jason Pruger <jpruger@ngkf.com>;
      Patrick Wood <pwood@crtl.com>; Dean <deanammour@gmail.com>; Eli Kafif <eligift@aol.com>
**Subject:** Re: 34 w 34th
   **Date:** Thu, Jul 9, 2015 7:03 pm

Hello everyone,

Arie Mrejen will be receiving/holding the escrow money and will wire the funds upon vacating.

Thanks,
Neil Hamuy

Sent from my iPhone

On Jul 9, 2015, at 6:32 PM, Alan Sasson <alan@sassonlaw.com> wrote:

> Michael,
> My client intends to vacate the premises by August 1, 2015 pursuant to the agreement.  It is my
> understanding that the HVAC violation has been cleared.  Please advise on how and when escrow funds will
> be released to my client, as my client would like to have the funds wired directly to my escrow account.
> Thanks
> Alan

> RATED BY
> **Super Lawyers**

> Alan J. Sasson, Esq.
> Law Office of Alan J. Sasson, P.C.
> 1669 East 12th Street, 2nd Fl.
> Brooklyn, NY 11229
> Ph. 718-339-0856
> Fax: 347-244-7178

> Confidentiality Notice: This email and the documents accompanying it contain information which is
> confidential and/or legally privileged. The information is intended only for the use of the individual or entity
> addressed on this email. If you are not the intended recipient, you are hereby notified that any reliance on
> the contents of this information is strictly prohibited, and that the documents should be returned to this firm
> immediately. In this regard, if you have received this email in error, please notify us by email at
> alan@sassonlaw.com immediately so that we can arrange the return of the documents.
> IRS Circular 230 Disclosure: As required by U.S. Treasury Regulations, we advise you that any tax advice
> contained in this (including any attachments) is not intended to be used for, and cannot be used for, the
> purpose of avoiding penalties under the United States federal tax laws.

> On Mon, Jul 6, 2015 at 12:32 PM, Michael Tsang <mtsang@tsanglawfirm.com> wrote:
>> Thanks for the update.  Please have Eli provide documented proof that the
>> violation has been cleared.

>> -----Original Message-----
>> From: Paul Popkin [mailto:ppopkin@aol.com]
>> Sent: Monday, July 06, 2015 12:29 PM
>> To: Neil Hamuy; Michael Tsang; Jason Pruger; Patrick Wood; Dean;
>> alan@sassonlaw.com
>> Subject: 34 w 34th

>> Eli has just informed me that the violation has been cleared. He is at the

DOB today. They told him it will take 3 days for it to show up in the
system but all has been cleared

Paul Popkin
201 819 0796

**From:** Paul Popkin <ppopkin@aol.com>
   **To:** Eli <eligift@aol.com>; Dean <deanammour@gmail.com>; alan <alan@sassonlaw.com>
**Subject:** Fwd: Vacate Agreement
  **Date:** Tue, Jun 23, 2015 8:16 pm

Below is the latest correspondence with Neil and his lawyer. Not sure who else they want to sign agreement but I will forward to you as soon as I receive.

Begin forwarded message:

> **From:** neil hamuy <hamuy3@yahoo.com>
> **Subject: Re: Vacate Agreement**
> **Date:** June 23, 2015 at 7:50:48 PM EDT
> **To:** Paul Popkin <ppopkin@aol.com>, Michael Tsang <mtsang@tsanglawfirm.com>
> **Cc:** Jason Pruger <jpruger@ngkf.com>, Patrick Wood <pwood@crtl.com>
> **Reply-To:** neil hamuy <hamuy3@yahoo.com>
>
> Hello Paul,
>
>  There are four tenants and souvenirs on 5th, so 3 signatures at the very least are not enough. It is fine if the agreement is signed in counterparts but a clean copy should be signed. We want to do this right. Michael, please clearly send Paul what needs to be signed and who needs to sign where. We need all parties to sign.
>
> Thanks,
>
> **From:** Paul Popkin <ppopkin@aol.com>
> **To:** Michael Tsang <mtsang@tsanglawfirm.com>
> **Cc:** Neil Hamuy <hamuy3@yahoo.com>; Jason Pruger <jpruger@ngkf.com>; Patrick Wood <pwood@crtl.com>
> **Sent:** Tuesday, June 23, 2015 6:03 PM
> **Subject:** Re: Vacate Agreement
>
> Yes. Everyone signed. It's difficult to get everyone to sign one document. I sent you 3 signatures.  Unless it's absolutely necessary please try to make this work
>
> Paul Popkin
> 201 819 0796
>
>
>
> > On Jun 23, 2015, at 5:46 PM, Michael Tsang <mtsang@tsanglawfirm.com> wrote:
> >
> > It is not a clean copy and it has otherwise not been signed by all tenants.
> >
> >
> >
> >> On Jun 23, 2015, at 5:42 PM, Paul Popkin <ppopkin@aol.com> wrote:
> >>
> >> Why do we need to sign again?

>>
>> Paul Popkin
>> 201 819 0796
>>
>>
>>> On Jun 23, 2015, at 5:35 PM, Michael Tsang <mtsang@tsanglawfirm.com> wrote:
>>>
>>> I will work on and provide a clean copy for all to execute.
>>>
>>> -----Original Message-----
>>> From: Paul Popkin [mailto:ppopkin@aol.com]
>>> Sent: Tuesday, June 23, 2015 5:14 PM
>>> To: Neil Hamuy; Michael Tsang; Jason Pruger; Patrick Wood
>>> Subject: Vacate Agreement
>>>
>>>
>>> Paul Popkin
>>> Licensed Real Estate Broker
>>> 373 Broadway #M1
>>> New York, NY  10013


Paul Popkin
Licensed Real Estate Broker
373 Broadway #M1
New York, NY  10013

# EXHIBIT B



362 Fifth Avenue
New York, NY 10001

T 212 563 6400
F 212 629 9424

April 30<del>24</del>, 2015

Mr. Neil Hamuy

Via email:    hamuy3@yahoo.com

Re:    34 West 34th Street, New York

Dear Neil:

This letter proposes that Hat World, Inc. wishes to lease space at the above referenced building based on the following terms and conditions:

**TENANT:**    Hat World, Inc.

**GUARANTOR:**    Genesco, Inc

**LANDLORD:**    RNJ New York Holdings LLC

**TRADE NAME:**    Lids/Lids Locker Room

**PREMISES:**    34 West 34th Street (Souvenir Store)

**SIZE:**    Ground Floor:  1,500 square feet (estimated)
Lower Level:  1,500 square feet (estimated)
Mezzanine:    600 square feet (estimated)

**USE:**    Lids/Lids Locker Room
The Premises shall be used only for the retail sale and display of headwear and apparel with athletic team, name brands, sports cartoon and/or theme logos; and the sale of pins, pennants, posters, flags, banners, license plates, backpacks, hand bags, shoes, sunglasses, scarves, hat/cap accessories and licensed branded team, and related items and accessories. In addition, Tenant shall have the right to offer monogramming and/ or silk printing services, and to have an embroidery machine in the Premises, at Tenant's option.

**TERM:**    One Ten (10) year term

All information supplied is from sources deemed reliable and is furnished subject to errors, omissions, modifications, removal of the listing from sale or lease, and to any listing conditions. This information may include estimates and projections with respect to future events. Such estimates and projections reflect various assumptions and actual results may vary materially. Any square footage dimensions set forth are approximate.



**ANNUAL BASE RENT:**   \*Tenant to put into escrow six hundred and seventy-five thousand dollars ($675,000.00), which is to be used as the buyout of the existing tenant. Tenant to release funds upon full execution of Lease and delivery of space to Tenant. Landlord to reimburse Tenant the sum of six hundred and seventy-five thousand dollars ($675,000.00) in rental abatements according to schedule outlined below. Tenant's base rental payment to be reflected in adjusted rental schedule below:

| | |
|---|---|
| Year 1: | $754,810 ~~701,245.00~~ per annum ($200,000.00) |
| Year 2: | $783,454 ~~728,275.00~~ per annum ($200,000.00) |
| Year 3: | $812,958 ~~756,130.00~~ per annum ($200,000.00) |
| Year 4: | $968,346 ~~900,810.00~~ per annum ($75,000.00) |
| Year 5: | $1,074,646 ~~1,040,346~~ ~~1,011,360~~ per annum |
| Year 6: | $1,106,885 ~~1,071,556~~ ~~1,041,795~~ per annum |
| Year 7: | $1,140,092 ~~1,103,703~~ ~~1,076,130~~ per annum |
| Year 8: | $1,174,295 ~~1,136,814~~ ~~1,108,410~~ per annum |
| Year 9: | $1,209,524 ~~1,170,918~~ ~~1,141,665~~ per annum |
| Year 10: | $1,245,809 ~~1,206,046~~ ~~1,175,910~~ per annum |

\*\* Journeys/Genesco lease to run co-terminus with Hat Hat World(Lids)/Genesco lease. Termination date to be determined by final date of mutually agreed upon Hat World(Lids)/Genesco lease. Additional term added to Journeys/Genesco lease to follow agreed upon rent escalation schedule per existing Journeys/Genesco lease. Termination date to be no later than January 31, 2026.

**ESCALATIONS:**   3% per annum

**RENT COMMENCEMENT:**   ~~Ninety (90) days~~ Sixty(60) days after lease commencement and delivery of space to Tenant. Tenant to receive free rent period in the form of ~~six~~four (64) months half-rent.

**LEASE COMMENCEMENT:**   Upon lease execution and delivery of vacant space to Tenant.

**REAL ESTATE TAXES:**   Tenant and Journey's will ~~to~~ pay their ~~its~~ proportionate share (33%) of real estate taxes estimated at $118,500.00 $237,000 per annum directly to the County/City/Government. ~~Landlord to provide tax history for the previous three years for the building.~~

All information supplied is from sources deemed reliable and is furnished subject to errors, omissions, modifications, removal of the listing from sale or lease, and to any listing conditions. This information may include estimates and projections with respect to future events. Such estimates and projections reflect various assumptions and actual results may vary materially. Any square footage dimensions set forth are approximate.



**ASSIGNMENT/
SUBLEASE:**

Tenant must have the right, without Landlord's consent required, to freely assign the Lease to: any affiliate of Tenant, any corporation which purchases all or substantially all of the assets of Tenant, and any corporation into which the Tenant merges or with which it consolidates. Tenant shall have the right to assign or sublease the premises to a like Tenant or a dry-use retailer with Landlord's consent, which shall not be unreasonably withheld, language to be further addressed in the Lease. Profits from any sublet or assignment shall accrue 50% to Landlord, 50% to Tenant. _Language to be exactly the same as Journeys lease._

**MAINTENANCE:**

Tenant shall be responsible for all maintenance and repairs to the building including but not limited to structural repairs.  Genesco is occupying 100% of the building. ~~Tenant shall pay to landlord as additional rent that proportionate share specified in the reference portion of the lease of all building maintenance costs incurred by Landlord. Maintenance costs shall include all costs other than capital costs which Landlord in its sole judgment shall deem necessary or advisable for maintenance of the land and the building on which the leased premises are a part including, but not limited to, landscaping, parking lot maintenance, surfacing and striping, pest control, roof repairs, structural repairs, outdoor lighting, management fees, and the like; premiums for liability, hazard, flood, windstorm, worker's compensation and other insurance. Tenant shall make monthly maintenance cost deposits with landlord (along with payment of minimum rent) in an amount equal to one-twelfth (1/12) of the Landlord's good-faith estimate of Tenant's annual share of such maintenance costs, with a final adjustment to be made between the parties not less frequently than annually, but is expressly agreed that Landlord, at its sole option, may issue such adjustments on a more frequent basis, but no interest or income on the amounts so deposited shall be due and payable thereon by the Landlord. Such maintenance costs deposits, as estimated by the Landlord shall be deemed Additional Rent. Provided however, and not withstanding anything contained anywhere in this lease to the contrary.~~ Tenant shall only be required to pay its proportionate share of structural repair items for an amount not to exceed ~~Five ten~~ thousand and NO/100 dollars (~~$5,000~~10,000.00) per occurrence with an annual maximum of ~~Fifteen thirty~~ thousand and NO/100 dollars ($30,000.00~~15,000~~) and a

All information supplied is from sources deemed reliable and is furnished subject to errors, omissions, modifications, removal of the listing from sale or lease, and to any listing conditions. This information may include estimates and projections with respect to future events. Such estimates and projections reflect various assumptions and actual results may vary materially.  Any square footage dimensions set forth are approximate.



~~lease term maximum of two one hundred thousand and NO/100 dollars ($100,000 200,000.00), exclusive of any renewal or any extension of the lease term.~~
The above is in the current Journeys lease, changes made to reflect Lids proportionate share.

SNDA:

Should property not be owned outright by Landlord, Landlord to provide SNDA to Tenant.

HAZARDOUS
MATERIAL:

~~Landlord will deliver to Tenant, Form ACP-5 (or similar), certifying that the Premise is asbestos free.~~

BROKERAGE:

This offer is being submitted subject to one brokerage commission paid by Landlord to Crown Retail Services as per separate agreement. Commission to be shared between Crown Retail Services (Patrick Wood) Newmark Grubb Knight Frank (Jason Pruger).

This proposal is non-binding and shall not create any rights or obligations on either party until the Lease has been fully executed and delivered neither Landlord nor Tenant shall be bound by the terms and provisions hereof. Above referenced deal is contingent upon site approval by Hat World, Inc. Either party may withdraw from negotiation of the Lease at any time in such party's sole discretion without liability.

Yours truly,

Patrick Wood
cc: Dick Proffitt
    Haim Chera

ACCEPTED & AGREED BY:

RNJ NY Holdings LLC [Landlord]

BY: _____    DATE: 4/30/15

    **Authorized Signatory**

Hat World {Tenant}

BY: _____    DATE: 5/22/15

All information supplied is from sources deemed reliable and is furnished subject to errors, omissions, modifications, removal of the listing from sale or lease, and to any listing conditions. This information may include estimates and projections with respect to future events. Such estimates and projections reflect various assumptions and actual results may vary materially. Any square footage dimensions set forth are approximate.