## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

IN RE:                                              Chapter 11

ELI KAFIF AND MARY KAFIF                **CASE NO.: 1-16-41959-nhl**

Debtorss.

## DEBTORS CHAPTER 11 PLAN

ALLA KACHAN, ESQ.
Attorney for Debtorss Eli Kafif and Mary Kafif
3099 Coney Island Ave, 3rd Floor
Brooklyn, NY 11235
Tel: (718) 513-3145
Fax: (347) 342-315
E-mail: alla@kachanlaw.com

## PLAN OF REORGANIZATION

The Debtors', by and through their attorney, Alla Kachan pursuant to 11 U.S.C. §1121 et seq., proposes the following Plan.

Eli Kafif and Mary Kafif ("Eli Kafif and Mary Kafif"), the above named captioned debtors and debtors-in-possession ("Debtors'") hereby submits the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement including all exhibits before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. The Debtors is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Nothing contained herein shall constitute an offer, acceptance or legally binding obligation of the Debtors or any other party in interest and the Plan is subject to approval of the Bankruptcy court and other customary conditions.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCOLSURE STATEMENT (INCLUDING ALL EXHIBITS) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I
### DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Rules of Construction**

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan or any Exhibit. Any term used and not defined in this Plan but is defined in the Bankruptcy Code of the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms shall include the plural as well as t h e  singular number, the masculine

gender shall include the feminine, and the feminine gender shall include the masculine.

## B.    Definition

**1.1    Administrative Claim** means as Allowed Claim for costs and expenses of administration of the Chapter 11 Case under section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code including: (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating business and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court and including Profession Fee Claims.

**1.2    Administrative Bar Date** means the last day in which creditors and parties-in-interest can file a proof of claim against the Debtors for administrative expenses.

**1.3    Administrative Period** means the period beginning on the Petition Date and ending on the Confirmation Date.

**1.4    Adversary Proceeding** means any and all actions previously commenced, or to be commenced, by the Debtors to recover money or property on behalf of the Debtors' Estate.

**1.5    Allowed Claim** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Debtors and the Holder of any Claim agree may adjudicate the Claim and any objection thereto), (b) that either has been Scheduled as a liquidated, non-contingent, and undisputed in an amount greater than zero on the Scheduled, or, is the subject of a timely filed proof of claim as to which either (i) no objection to its allowance has been Filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (c) that is expressly Allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if such written request is required) in each case as to which the Debtors, or any other party in interest has not interposed a timely objection or has interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has

been denied by a Final Order.

**1.6**    **Avoidance Actions** means Causes of Action arising under Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action; provided, however, that Avoidance Actions shall not be deemed to include those causes of action released, waived and/or discharged pursuant to this Plan or an order of the Bankruptcy Court.

**1.7**    **Ballot** means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

**1.8**    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Case.

**1.9**    **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of New York or any other court with jurisdiction over the Chapter 11 Case.

**1.10**    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereinafter amended.

**1.11**  **Bar Date** means the last day in which creditors and parties-in-interest can file a proof of claim against Debtors.

**1.12**    **Cash** means the legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

**1.13**    **Chapter 11 Case** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtors.

**1.14**    **Claims** means a "claim" as defined in section 101(5) of the Bankruptcy Code.

**1.15**    **Claimant** means the holder of a Claim.

**1.16**    **Claims Objection Deadline** means the last day for Filing objections to Claims, other than Administrative Claims and Professional Fee Claims, which day shall be (a) the later of (i) 60 days after the Effective Date and (ii) 60 days after the filing of a proof of claim for, or request for payment of, such Claim and (b) such other date as the Bankruptcy Court may order.

**1.17**    **Class** means a category of Holders of Claims, as described in Article II.

**1.18**    **Closing Date** means the date that Debtors completes all Plan payments and a final decree is entered by the Court.

**1.19** **Confirmation** means entry of a Final Order confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

**1.20** **Confirmation Date** means the date on which the Bankruptcy Court entered the Confirmation Order.

**1.21** **Confirmation Hearing** means the hearing held before the Bankruptcy Court to consider confirmation of this Plan pursuant to Section 1128(a) and 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

**1.22** **Confirmation Order** means the order issued and entered confirming the Plan, pursuant to Section 1129 of the Bankruptcy Code.

**1.23** **Consummation of the Plan** means the period by which the Debtors commence distribution under the Plan.

**1.24** **Creditor** means all entities and/or individuals holding Claims against the Debtors' estate.

**1.25** **Cure Period** means the period of thirty (30) days the Debtors has to cure any default in payments required under the Plan after a Claimant provide written notice to the Debtors and attorneys of the default.

**1.26** **Debtors** means Eli Kafif and Mary Kafif.

**1.27** **Disallowed Claim** means a Claim, or any portion thereof, that (a) has been disallowed by the Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy or any Final Order, or otherwise deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

**1.28** **Disbursing Agent** means the Post-Confirmation Debtors.

**1.29** **Disclosure Statement** means the Disclosure Statement filed pursuant to Section 1125 of the Bankruptcy Code filed by the Debtors in connection with the

Reorganization Case, and all Exhibits in connection therewith and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendments or modification.

**1.30    Disputed Claim** means a Claim, or any portion thereof, designated as disputed, contingent or unliquidated in the Debtors' Schedules filed in connection with its Reorganization Case, or any Claim against which an objection to the allowance thereof has been interposed and as to which such objection a Final Order has not been entered or any Claim against which the period for bringing such objection as provided hereunder has not expired.

**1.31    Disputed Claim Amount** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtors and the Holder of the Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which the Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtors and the holder of the Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to the Disputed Claim; or (c) if the Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**1.32    Disputed Claim Holder** means the holder of a Disputed Claim.

**1.33    Distribution** means any distribution pursuant to the Plan to the Holders of Allowed Claims.

**1.34    Distribution Date** means the date upon which initial distributions are made by the Disbursing Agent to Holders of Allowed Claims entitled to receive Distribution under the Plan, which shall be thirty (30) days after the Effective Date.

**1.35    Effective Date** means the day following the day upon which the order of Confirmation has become a Final Order.

**1.36    Estate** means the estate of the Debtors created under section 541 of the Bankruptcy Code.

**1.37    Exhibit** means the exhibits filed in support of this Plan or as an appendix to the Disclosure Statement.

**1.38    Extension Period** means the additional ninety (90) days that the Cure period shall be extended in the event of any act of terrorism or God which adversely impacts upon the ability of the Debtors or Reorganized Debtors to satisfy payment obligation under the Plan.

**1.39    Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending.

**1.40    General Unsecured Claim** means a Claim that is not an Administrative Claim, Priority Tax Claims, Priority Non-Tax Claim, Secured claim or Professional Fee Claim.

**1.41    Governmental Unit** means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

**1.42    Holder** means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

**1.43    Impaired** means a Claim or Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.44 Person** means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

**1.45    Petition Date** means May 4, 2016, the date of the commencement of the Debtors' Reorganization Case.

**1.46    Plan** means this document entitled "Plan of Reorganization" including the exhibits and all supplements, appendices, and schedules, either in its current form or as the same may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

**1.47    Plan Supplement** means, if any, such exhibits, documents, lists or schedules

not filed with the Plan but as may be filed in connection therewith within ten (10) days of the Confirmation Hearing.

**1.48    Priority Non-Tax Claim** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.49    Priority Tax Claim** means a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.50    Post-Confirmation Expenses** means all reasonable fees, expenses and disbursements of Professional Person incurred after the Confirmation Date.

**1.51    Professional** means (a) any professional employed in the Chapter 11 Case pursuant to sections 327, 328, or 1103 or otherwise of the Bankruptcy Code and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.52    Professional Fees** means all allowances of compensation and reimbursement of expenses Allowed, or to be allowed pursuant to Section 330 or 331 of the Bankruptcy Code, to any Professional Person retained pursuant to Section 327 of the Bankruptcy Code.

**1.53    Proof of Claim** means the proof of claim that must be filed on or before the Bar Date or such other date as prescribed by the Bankruptcy Court.

**1.54    Released Parties** means any of the Debtors' and its agents, advisors, attorneys, and representatives.

**1.55    Schedules** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors' pursuant to Section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.56    Tax Claim** means all or that part of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtors, including income and employment taxes and any related penalties or interest.

**1.57    Unclassified Claims** means Administrative, Priority and Tax Claims.

**1.58    Unimpaired** means a Claim that is not impaired within the meaning of Section 1124 of the bankruptcy Code.

**1.59    Unsecured Claims** means any Claims which do not qualify as an

Administrative Claim, Priority Claim or Secured Claim.

      **1.60   Unsecured Creditor** means the holder of an Unsecured Claim.

      **1.61   Voting Deadline** means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject the Plan must be received in order to be counted.

      **C.    Rules of Interpretation**

      The provisions of the Plan shall control over any descriptions contained in the Disclosure Statement. Where the Plan refers to "any contract, instrument, or other agreement or document created in connection with the Plan," the provisions of such contract, instrument, or other agreement or document shall control over any inconsistency with the terms of the Plan, and the Plan will be interpreted to avoid any inconsistencies with the provisions of such contract, instrument, or other agreement or document.

      1.     Without limiting foregoing, the rules of construction set forth in Bankruptcy Code §102 shall apply. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to the Exhibits to the Disclosure Statement except to the extent expressly so stated in the Disclosure Statement.

      2.     The words "herein," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause contained in the Plan.

      3.     Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and Exhibits are references to Articles, Sections and Exhibits of or to the Plan.

      4.     Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been amended, restated, modified, or supplemented as of the Effective Date.

      5.     Captions and reference to Articles and Sections in the Plan are inserted for convenience only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provisions hereof.

      **D.    Computation of Time**

      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the State of New York shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

### A.    Introduction:

All Claims except Administrative Claims, Priority Tax Claims and Bankruptcy Fees placed in the Classes set forth before below. In accordance with Section 1123(a)(I) of the Bankruptcy Code, Priority Tax Claims have not been classified. A claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim falls within the description of the other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is Allowed in that Class and the Claim has not been paid, released or otherwise settled prior to the Effective Date.

### B.    Unclassified Claims

**1.**    Administrative Claims

**2.**    Priority Tax Claims.

**3.**    Bankruptcy Fees.

### C.    Impaired Classes of Claims

**Unimpaired Claims**

*Class II – (Secured Claims)* – Shall consist of secured claim of Seterus Inc. in the amount of $436,331.73 for a first mortgage for the property located at 1870 East 18th Street, Brooklyn NY 11229. Shall consist of secured claim of Seterus Inc. in the amount of $235,991.97 first mortgage for the property located at 1924 Homecrest Avenue, Brooklyn NY 11229. Shall consist of secured claim of Seterus Inc. in the amount of $235,991.97 first mortgage for the property located at 1924 Homecrest Avenue, Brooklyn NY 11229. Shall consist of secured claim of Seterus Inc. in the

amount of $468,265.17 first mortgage for the property located at 1821 East 14th Street, Brooklyn NY 11229. Shall consist of secured claim of AmeriCredit Financial Services, Inc. d/b/a GM Financial for the Financed Vehicle in the amount of $23,595.23.

### Impaired Claims

*Class III - (Secured Claim)* – Shall consist of secured claim of PNC Bank in the amount of $40,421.05 for home equity line of credit for the property located at 1821 East 14th Street, Brooklyn NY 11229.

As of the moment of the filing of the Chapter 11 petition, Citibank was a secured creditor in the amount of $ 244,071.00, holding credit line against the property located at 1870 E 18th Street, Brooklyn NY 11229. As of June 3, 2016 the debt has been discharged by the Bank as evidenced by the letter dated June 3, 2016 attached here to as Exhibit "F".

*Class IV - (Unsecured Claim)*- Shall consist of the claims of disputed rental debt resulting from a personally guaranteed commercial lease held by RNJ New York Holdings, LLC In the amount of $948,660.83. The claim is partially disputed as it is the Debtors' contention that RNJ New York Holdings, LLC re-let the premises one month after the Debtors' vacated the premises. Furthermore, the Debtors vacated the premises at the urging of the Landlord, as they had located another tenant for the property at the time and had retained the Debtor's security deposit of $150,000.00 upon the Debtor's departure. The undisputed portion of the claim is $45,000.00, which equals one month's rental payment. RNJ New York Holdings, LLC is being offered 20% of the undisputed claim amount with a 60 month payments of $150.00 per month.

The claim of Dodi Hafif is disputed in its' entirety. It is the contention of the Debtors that they have a monetary claim against Dodi Hafif, and owe no contractual or any other debt to Mr. Hafif, therefore Mr. Hafif is not being offered any treatment under the plan.

*Class V - (Unsecured Claim)*- Shall consist of the claims of general unsecured creditors in the Debtors' case, totaling $321,481.55.

### ARTICLE III

## TREATMENT OF CLAIM

### A.    Unclassified Claims

### 1.    Administrative Claims

Administrative claims consist of the Debtors' duly retained professionals and any other administrative expenses allowed under Section 503 of the Bankruptcy Code. Administrative Claims will include the fees and expenses of the Debtors' Counsel, Alla Kachan, Esq., in the approximate amount of $2,000.00 (through confirmation, exclusive of the pre-petition retainer received prior to the Petition Date in the amount of $12,000.00 from the Debtors').

Wisdom Professional Services Inc. assert a claim for the fees and expenses as accountants for the Debtors', in the approximate amount of $2,000.00

The claims of Debtors'' professionals shall be subject to final fees applications pursuant to Bankruptcy Code Section 330 and orders of the Court approving the fees and expenses as sought by this application. The Debtors' estimates that the total administrative fees paid to professionals will equal $4,000.00.

### 2.    Statutory Bankruptcy Fee

All Bankruptcy fees and charges assessed against the Debtors' under 28 U.S. C. § 1930(a)(6) payable to the United States Trustee shall be paid in cash by the Effective Date, with any applicable interest thereon. Thereafter, such fees and any applicable interest shall continue to be paid by the Debtors' until Debtors' case is closed by entry of a final decree, converted, or dismissed.

The Debtors' shall pay all United States Trustee quarterly fees under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors 'affairs, until the entry of a Final Decree, dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Additionally, the Debtors' shall file quarterly Post Confirmation Reports and schedule quarterly post-confirmation status conferences with the Court.

### 3.    Unimpaired Claims

*Class II – (Secured Claims)* – Shall consist of secured claim of Seterus Inc. in the

amount of $436,331.73 for a first mortgage for the property located at 1870 East 18th Street, Brooklyn NY 11229. Mortgage has been modified and will continue to be paid in accordance with the mortgage terms as modified terms.

Shall consist of secured claim of Seterus Inc. in the amount of $235,991.97 first mortgage for the property located at 1924 Homecrest Avenue, Brooklyn NY 11229 will continue to be paid in accordance with original loan terms.

Shall consist of secured claim of Seterus Inc. in the amount of $468,265.17 first mortgage for the property located at 1821 East 14th Street, Brooklyn NY 11229. Mortgage has been modified and will continue to be paid in accordance with mortgage terms as modified.

Shall consist of secured claim of AmeriCredit Financial Services, Inc. d/b/a GM Financial for the Financed Vehicle in the amount of $23,595.23. will continue to be paid in accordance with original loan terms.

**Impaired Claims**

*Class III - (Secured Claim)* – Shall consist of secured claim of PNC Bank in the amount of $40,421.05 for home equity line of credit for the property located at 1821 East 14th Street, Brooklyn NY 11229. Claim will be paid in full with 60 month equal payments of $673.68.

As of the moment of the filing of the Chapter 11 petition, Citibank was a secured creditor in the amount of $ 244,071.00, holding credit line against the property located at 1870 E 18th Street, Brooklyn NY 11229. As of June 3, 2016 the debt has been discharged by the Bank as evidenced by the letter dated June 3, 2016 attached here to as Exhibit "F".

*Class IV - (Unsecured Claim)*- Shall consist of the claims of disputed rental debt resulting from a personally guaranteed commercial lease held by RNJ New York Holdings, LLC In the amount of $948,660.83. The claim is partially disputed as it is the Debtors' contention that RNJ New York Holdings, LLC re-let the premises one month after the Debtors' vacated the premises. Furthermore, the Debtors vacated the premises at the urging of the Landlord, as they had located another tenant for the property at the time and had retained the Debtor's security deposit of $150,000.00 upon the Debtor's departure. The undisputed portion of the claim is $45,000.00, which equals one month's rental payment. RNJ New York Holdings, LLC is being offered 20% of the undisputed claim amount with a 60 month payments of $150.00 per month.

The claim of Dodi Hafif is disputed in its' entirety. It is the contention of the Debtors that they have a monetary claim against Dodi Hafif, and owe no contractual or any other debt to Mr. Hafif, therefore Mr. Hafif is not being offered any treatment under the plan.

*Class V - (Unsecured Claim)* - consists of the claims of general unsecured creditors in the Debtors' case totaling approximately $321,481.55 The Debtors proposes to pay 9% dividend of their allowed  claims in 60 equal monthly installments effective thirty (30) days after the  Effective Date of this Plan.

| Members of Class V | Aggregate Dollar Amount of Claims in Class V | Plan Treatment of Class V |
|---|---|---|
| American Express Bank FSB | $2,325.49 | 9% dividend ($209.29) in 60 monthly installment payments in the amount of $3.48 |
| American Express Centurion Bank | $2,070.29 | 9% dividend ($186.32) in 60 monthly installment payments in the amount of $3.10 |
| American Express Centurion Bank | $1,554.43 | 9% dividend ($139.90) in 60 monthly installment payments in the amount of $2.34 |
| Bk Of America | $ 5,873.00 | 9% dividend ($528.57) in 60 monthly installment payments in the amount of $8.80 |
| Bk Of America | $ 3,997.00 | 9% dividend ($359.73) in 60 monthly installment payments in the amount of $5.60 |
| BLMDSNB | $ 2,008.00 | 9% dividend ($180.72) in 60 monthly installment payments in the amount of $3.01 |
| Capital One, N.A. | $3,648.64 | 9% dividend ($328.38) in 60 monthly installment payments in the amount of $5.47 |
| Capital One, N.A. | $2,017.38 | 9% dividend ($181.56) in 60 monthly installment payments in the amount of $3.02 |
| Capital One, N.A. | $244.06 | 9% dividend ($21.96) in 60 monthly installment payments in the amount of $0.36 |
| Chase Bank | $15,750.00 | 9% dividend ($1,417.50) in 60 monthly installment payments in the amount of $23.62 |
| Chase Bank | $8,799.00 | 9% dividend ($791.91) in 60 monthly installment payments in the amount of $13.20 |
| Chase Bank | $4,833.00 | 9% dividend ($434.97) in 60 monthly installment payments in the amount of $7.25 |

| Chase Bank | $898.00 | 9% dividend ($80.82) in 60 monthly installment payments in the amount of $1.35 |
| City Merchandise, Inc. | 10,522.53 | 9% dividend ($947.00) in 60 monthly installment payments in the amount of $15.78 |
| Discover Fin Svcs Llc | $6,141.80 | 9% dividend ($552.76) in 60 monthly installment payments in the amount of $9.21 |
| Discover Fin Svcs Llc | $1,417.57 | 9% dividend ($127.58) in 60 monthly installment payments in the amount of $2.12 |
| JP Morgan Chase Bank NA | $ 108,084.00 | 9% dividend ($9,727.56) in 60 monthly installment payments in the amount of $162.13 |
| Lvnv Funding Llc | $748.16 | 9% dividend ($67.33) in 60 monthly installment payments in the amount of $1.12 |
| Mcydsnb | $ 318.00 | 9% dividend ($28.62) in 60 monthly installment payments in the amount of $0.47 |
| New York Popular Inc | $6,360.65 | 9% dividend ($572.45) in 60 monthly installment payments in the amount of $9.54 |
| Stephanie Izzo | $120,000.00 | 9% dividend ($10,800.00) in 60 monthly installment payments in the amount of $180.00 |
| Synchrony Bank | $9,110.49 | 9% dividend ($819.94) in 60 monthly installment payments in the amount of $13.66 |
| Td Bank N.A. | $1,755.00 | 9% dividend ($157.95) in 60 monthly installment payments in the amount of $2.63 |
| Virtuoso Sourcing Group | $1,431.00 | 9% dividend ($128.79) in 60 monthly installment payments in the amount of $2.15 |
| Y. Levy Contracting Corp. | Unknown | 9% dividend ($) in 60 monthly installment payments in the amount of $ |
| Sprint Corp. | $1,574.06 | 9% dividend ($141.67) in 60 monthly installment payments in the amount of $2.36 |

As a result, Classes III, IV, V. Claims are impaired and are entitled to vote pursuant to §1126(f) of the Bankruptcy Code.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

### A.    Impaired Classes of Claims entitled to Vote

The Holders of Claims in Classes III, IV, V, are entitled to vote to accept or reject the Plan, and the votes of the Holders of claims in said Classes will be solicited.

### B.    Impaired Classes of Claims entitled to Vote

In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class or Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one- half (1/2) in number of Allowed Claims of such Class that have timely and properly voted.

## ARTICLE V

## MEANS FOR IMPLEMENTATION THE PLAN

### A.    Implementing Action

The Plan will be financed from income generated from the Debtors rental income as well as income from employment. Following the Effective Date, or as soon thereafter, the following shall occur to implement the Plan (i) all  actions, documents and agreements necessary to implement the Plan shall be taken or executed;  and (ii) the Disbursing Agent shall make all Distributions required to be made to Holders  of Allowed claims pursuant to the Plan.

### B.    Post-Effective Date Costs

From and after the Effective Date and without further order of the Bankruptcy Court, the Debtors shall pay the fees and expenses of its Professionals in the ordinary course of business including, without limitations, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### C.    Preservation of Causes of Action

In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in an order of the Bankruptcy Court the Debtors and its Estate shall retain all of the causes of action arising under applicable state laws, including, without limitation, the Causes of Action, Avoidance Actions, if any, and all other causes of action of a trustee and debtors in possession under the Bankruptcy Code.

## ARTICLE VI

## DISTRIBUTION UNDER THE PLAN

### A.    The Disbursing Agent(s)

The reorganized Debtors shall act as Disbursing Agent(s) under the Plan, subject to the terms and provisions of the Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy court or required by the Bankruptcy Code or the Bankruptcy Rules.

### B.    Cash Payments

Cash payments made pursuant to the Plan will be made on the Effective Date in U.S. Dollars by checks drawn on a banking institution that is an authorized depository in the Eastern District of New York selected by the Debtors or by wire transfer from a banking institution that is an authorized depository in the Eastern district of New York at the option of the Debtors.

### C.    Transmittal of Distribution

All distributions shall be deemed made at the time such distribution is deposited in the United States mail, postage prepaid. Except as otherwise agreed with the holder of an Allowed Claim or Allowed Interest such distribution shall be distributed by mail to (i) the latest mailing address filed of record for the party entitled thereto or to a Holder of a power of attorney designated by such Holder to receive such distributions or (ii) if no such mailing address has been so filed, the mailing address reflected upon the filed Schedules of Assets and Liabilities or in the Debtors' books and records.

### D.    Undeliverable Distribution

If any distribution is returned to a disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to the Holder of the Allowed Claim or Allowed Interest on which such distribution was made unless and until the Debtors is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to the Holder without interest. Undeliverable distributions shall remain in the possession of the Debtors until such time as a distribution becomes deliverable or is deemed canceled (as hereinafter provided). Any unclaimed distribution held by Debtors shall be accounted for separately, but the Disbursing Agent shall be under no duty to invest any such unclaimed distribution in any manner. Any Holder of an Allowed

Claim or Allowed Interest that does not present a claim for an undeliverable distribution within one hundred eighty (180) days after the date upon which a distribution is first made available to such Holder shall have its rights to such distribution discharged after service by the Debtors with a waiver notice detailing the creditor(s) name and distribution amount, and shall be forever barred from asserting any such Claim or Interest against the Debtors or its property or against any other Person, including the Debtors. All unclaimed or undistributed distributions shall, pursuant to Bankruptcy Code Section 347(b) be the property of the Debtors and shall be treated as determined by the Debtors in its sole and absolute discretion.

### E.    Interest on Claims

Post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim unless otherwise specifically provided for in the Confirmation Order, or required by applicable bankruptcy law.

### F.    Withholding and Reporting Requirements

In accordance with Section 346 of the Bankruptcy Code and in connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority. The Disbursing Agent shall be authorized to take any and all actions necessary and appropriate to comply with such requirements. As a condition of making any distribution under Plan, the Disbursing Agent may require the Holder of an Allowed Claim to provide such Holder's taxpayer identification number, and such other information, certification or form as necessary to comply with applicable tax reporting and withholding laws. Notwithstanding any other provision of the Plan, each Person receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

## ARTICLE VII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing: (i) The Confirmation Order shall have

been entered and become a Final Order and shall provide that the Debtors is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the agreements or documents created in connection with the Plan or effectuate advance or further the purposes thereof; (ii) All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and (iii) The Debtors shall have sufficient Cash to enable all required payments necessary to Confirmation to be made.

If the Effective Date does not timely occur, the Debtors reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void. If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtors may assume and assign, or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of 30 days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.    Time Limit for Objections to Claims

Objections to Claims shall be filed by the Debtors with the Court and served upon each Holder of each of the Claims to which objections are made, not later than sixty (60) days subsequent to the Confirmation Date or with such other time period as may be fixed by the Court.

### B.    Resolution of Disputed Claims

Unless otherwise ordered by the Court, the Debtors shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretions, without notice to any party in interest.

Notwithstanding any other provision of the Plan, no Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to the Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be

liable to the Debtors on account of a Cause of Action, no Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

### C.    Distribution after Allowance

Distributions to the Holder of a disputed claim, to the extent that it ultimately becomes an Allowed claim, will be made in accordance with provisions of the Plan that govern distributions to Holders in that Class.

### D.    Estimation

The Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Effective Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

## ARTICLE IX

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejected Contracts and Leases

Except as otherwise provided in the Confirmation Order or the Plan, the Confirmation Order shall constitute an order under Section 365 of the Bankruptcy Code rejecting all

pre-petition executor contracts and unexpired leases to which the Debtors is a party, to the extent such contracts or leases are executor contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtors, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, or (c) is the subject of a pending motion to assume or reject on the Confirmation Date.

### B.    Bar to Rejection Damages

If the rejection of an executor contract or unexpired lease gives rise to a Claim by the other party or parties to the contract or lease, the Claim shall be forever barred and shall not be enforceable against the Post-Confirmation Debtors, unless a Proof of Claim is filed and served on the Post- Confirmation Debtors within 30 days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

### ARTICLE X
### DEFAULT

The Debtors shall be deemed in default if it fails to make timely payments to any creditors as provided for in the Plan and the Debtors and each creditor shall abide by the following:

1.Upon written receipt from any creditor of notice of default relating to payments, the Debtors shall have a period of thirty (30) days from receipt of such notice to cure such default, during such 30-day period, the creditors shall take no action to terminate the Debtors' Plan. If such default is cured by the Debtors within the 30-day period, the Plan shall continue in full force and effect. Any notices of default under the Plan shall be served upon the Debtors and Debtors' attorney.

2.If full payment of the default amount is not paid by the Debtors within thirty (30) days of such demand, the Internal Revenue Service and/or New York State Department of Taxation and Finance may collect any unpaid liabilities through governing administrative collection provisions, and the automatic stay of 11 U.S.C. §362(a) is lifted for this purpose without further order of the court.

### ARTICLE XI
### DISCHARGE AND INJUNCTION

### A.    Discharge of the Debtors

Pursuant to Section 1141(d)(5) of the Bankruptcy Code, upon the Effective Date, the Debtors will be discharged from any claim that arose prior to the petition date whether or not the Holder of the Clam has accepted the Plan, except that the debtors may, by separate motion and after notice and a hearing seek discharge for cause. Pursuant to Section 1141(d)(2) of the Bankruptcy Code, the Debtors will not be discharged from any debt excepted from discharge under section 523 of this title.

### B.    Release by the Debtors

To the extent permitted by Section 1125(e) of the Bankruptcy Code on the Effective Date, the Debtors and its Estate shall be released unconditionally, and hereby deemed to forever release unconditionally, (i) Debtors' Professionals from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (other than the right to enforce the performance of their respective obligations, if any, to the Debtors under the Plan, and the contracts and other agreements delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, directly or derivatively, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Case, the Plan or the Disclosure Statement provided, however, that notwithstanding the foregoing nothing contained herein is intended to or shall operate as a release of any claims for fraud, willful misconduct or gross negligence.

### C. Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against the Debtors are permanently enjoined from taking any of the following actions against the Debtors, its Estate, or any of their property on account of any such Claims: (1) commencing or continuing, in any manner or in any place, any action or other proceeding; (2) enforcing, attaching, collecting or recovering in any manner, any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or

encumbrance; (4) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors unless authorized under the Plan; (5) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained in the Plan shall preclude such Persons from exercising their rights pursuant to an d consistent with the terms of the Plan or the Confirmation Order.

### D.    Limitation of Liability

Except as otherwise provided in the Plan, the Debtors and its Professionals and any of such parties' successors and assigns, shall not have or incur any claim, action, proceeding, Cause of Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment or Claim (as defined) in Section 101(4) of the Bankruptcy Code), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law equity or otherwise to one another or to any Holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or any of their successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Case, negotiation and filing of the Plan or any prior plans, filing Chapter 11 Case, the pursuit of confirmation of the Plan or any prior plans, the consummation of the Plan, the administration of the Plan or the property to be liquidated other than resulting from and/or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing herein shall abrogate the requirements of any applicable professional disciplinary rules.

### E.    Terms of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless otherwise provided in this Plan. Upon the Effective Date, the injunction provided in Article XI (D) shall apply.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes:

1. to determine any and all objections to the allowance of claims;

2. to determine any and all pending applications for the rejection or assumption of executor contracts or unexpired leases to which the Debtors is a party or with respect to which it may be liable, and to hear and determine, and if not be to liquidate, any and all Claims arising therefrom;

3. to determine any and all applications, adversary proceedings, and contested or litigated matters, to set aside liens or encumbrances and to recover any preferences, transfers, assets or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

4. to consider any modifications of the Plan, any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Code, including the Confirmation Order, to the extent authorized by the Bankruptcy Code or other applicable law;

5. to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, including disputes between or among classes of claimants under the Plan regarding allocations or payments of distribution hereunder;

6. to consider and act on the compromise and settlement of any claim against or cause of action by or against the Debtors or the Debtors' estate;

7. to determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan, including, but not limited to, extending and time limits provided in the Plan and to implement the transfer of the fee simple interest in the Premises to Debtors;

8. to fix the allowance of compensation of professionals;

9. Enforce all orders previously entered by the Bankruptcy Court; and

10. Enter a Final Decree closing the Chapter 11 Case.


## ARTICLE XIII

## GENERAL PROVISIONS

### A.    Modification and Amendments

The Debtors may alter, amend or modify the Plan or any Exhibits under Section 1127(a) of the Bankruptcy code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan as defined in Section 1101(2) of the Bankruptcy Code, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### B.    Severability

If any provision in this Plan is determined to be invalid, void or unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### C.    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and their respective successors and assigns.

### D.    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall insure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

### E.    Final Decree

Pursuant to Local Bankruptcy Rule 3022-1, within fifteen (15) days following the substantial administration of the estate, the Debtors or the Reorganized Debtors shall file, on notice to the United States Trustee, an application and a proposed order for a final decree closing this case.

### F.    Post-Confirmation Report

The Debtors shall be required to file quarterly post-confirmation status reports until the case is closed, converted, or dismissed whichever happens earlier.

### G.    Notice and Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon the Debtors under the Plan shall be (a) in writing, (b) served by (i) hand delivery, (ii) overnight delivery service, (iii) first class mail, (iv) email or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed and (d) addressed as follows:

**Law Offices of Alla Kachan, P.C.**
**3099 Coney Island Avenue, 3rd Floor**
**Brooklyn, NY 11235**
**Phone: (718) 513-3145**
**Fax:(347)-342-3156**

**alla@kachanlaw.com**

### H.    Plan Exhibits

Any and all Plan Exhibits, or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least three business Days prior to the date of the commencement of the Confirmation Hearing. Upon filing, those documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of any document upon request to the Debtors.

### I.    Filing of Additional Documents

On or before substantial consummation of this Plan, the Debtors shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated: Brooklyn, New York
May 3, 2017

*/s/ Eli Kafif*
Eli Kafif

*/s/ Mary Kafif*
Mary Kafif

*/s/ Alla Kachan*
Alla Kachan, Esq.

Law Offices of Alla Kachan, PC
3099 Coney Island Avenue, 3rd Floor
Brooklyn, NY 11235
Tel.: (718)-513-3145